Opinion of the court by
Judge Catron,
in March 1821, the wife of Lawson was delivered of an illegitimate child, she being then a single woman. She charged James Scott with being the father of the child; and afterwards intermarried with the plaintiff in error, John Lawson.
At the October term of the county court for 1824, James Scott filed his petition, and prayed that the child might be legitimated, and made his heir, according to the provisions of the act of 1805, ch. 2: the court made the order of filiation, named the child after the reputed father, and recorded it his heir. The court thereupon de- *93 dared, that the father having legitimated the child, had the right to the custody of it: whereupon an order was made, “that said Scott take, into his custody and keeping, the child, and that he exercise the rights, and authority of a lawful father to said child.” The plaintiff, Lawson, was present, and on behalf of himself and wife objected to the order being made; his objections were overruled, to which by his counsel he excepted.
Lawson and wife then filed a petition for a certiorari in the circuit court, setting forth the proceedings of the county court, and alleging they were entirely able to support the child, and praying that said proceedings might be brought up and examined by the circuit court. The court refused to grant writs of certiorari &c. to which opinion exception was taken by Lawson and wife, and a bill of exceptions sealed by the court setting out all the facts in the cause. Lawson and wife then prayed and obtained an appeal in the nature of a writ of error to this court.
In the case of the State against Bob (a negro,) decided at the present term of this court, I was of opinion, that by the act of 1811, ch. 72, sec. 11, a writ of error would not lie, from the judgment of a circuit court, refusing in open court to order a cause to be brought up by a writ of cer-tiorari. But three of the judges of this court being of a different opinion, and having decided in the cause refer-cd to, that an appeal in the nature of a writ of error did lie, from the opinion of the circuit court, refusing to grant said writ, upon a proper case bhing made out, it becomes my duty to acquiesce in the opinion then delivered, because I know, were the court full, the cause would be adjudged to be properly before us; and so I shall consider it.
The county court state in their opinion, that when the reputed father came into court, legitimated the child and declared it. his heir, and gave it his name, then he had the same right to the child that he would have had, had it been born in wedlock, and the mother been Scott’s wife» This was the ground of the decision, they tell us in the *94 exceptions. The circuit court refused to quash the proceedings of the county court, and must he presumed to liave been of the same opinion.
To ascertain whether these opinions are founded in law, it must be examined. First, what are the rights of the mother of a legitimate child? Perhaps the strongest law in animated nature, is the disposition of the female to protect and support her offspring; and in human society, is far beyond the reach of municipal control, except to a small extent by way of regulation, in some particular instances. By the common law of England, the mother of a child born out of wedlock, has the undoubted right to the possession thereof. 1 Ba. Ab. 521, (note.) Does the statute of 1805 alter the common law? It is thought not. The mother is the natural guardian of the child. The father, if it is born in wedlock, is the municipal guardian of both the mother and the child; and why? Because he is bound to support them. The mother has no rights that are notmerged in the rights of her husband, and in whose name she is compelled to act. The married woman becomes the bounden servant of the husband to all political purposes, by the common law; and he is entitled to the custody of the mother, and of course the child also. But it never was intended, even by the marital relation of husband and wife, that the great law of nature should be violated by a separation of the mother from her infant. Is this same rule observed by the statute of 1805? Not an expression to the contrary has been used by the legislature in the act. — Has, by implication, the father any powers given him violating the principle above referred to? To ascertain this, it must be recollected that the rights of the mother are contended to have been taken away by the filiation made in the county court. The reputed father has it perfectly at his discretion to legitimate the child or not, as he may think proper, and at any time he may choose, and then take it into possession at his will and pleasure, or let it alone. Of all this proceeding, which so nearly affects the mother, she has no notice; and if she had could not possibly resist it. The woman cannot be *95 deprived of any article of property of the least value, unless she has notice of the judgment by which it is decreed away; yet it is urged that her child, to whom she has the strongest right, possibly, to be found in the laws of nature, or the English common law, can be taken from her at discretion, without notice or the power of resistance, by an exparte judgment. ' The statute never intended to give the reputed father any such power.
It is insisted, however, that by virtue of the act of 1822, ch. 29, the county courts are bound to “giue” the child to the reputed father on his application, after it is 3 years old. The act provides the amount the reputed father, charged with the maintenance of the child, shall pay for the three first years; and then continues: — “At the expiration of which time it shall be the duty of said court, making such allowances, to dispose of such child or children, in such manner as shall most conduce to the interest of such child or children, either by giving it to the reputed father, or binding it out to some suitable person^ in their discretion.” The act of 1762, ch. 5, sec. 19, provides, that when any orphan child shall not have estate sufficient to be maintained by the profits thereof, when placed in the hands of a guardian, then such orphan shall be bound apprentice, at the discretion of the county court; and the court may also bind out in like manner all free base born children. The statutes of 1762 and 1822 mean the same.
Suppose a father dies insolvent, leaving his wife with a single child, who has no estate whatever, but the mother has a large landed estate, and is very wealthy; would the county court have the power to take her child from her at discretion? It is an orphan and within the words of the statute of 1762. Nor could the kindest treatment possible by the mother, alter the powers of the county court, if the only fact necessary to give it power over the child was, that it was an orphan. The idea that a child thus situated could be taken from the mother, and bound apprentice to any mechanical employ the county court chose, has perhaps not in sixty years occurred to *96 any one man who has been a member of the county court. Another fact must appear, to give the county court jurisdiction over the child. It must be a pauper.
Then they can bind, taking bond and security for the correct treatment and education of the orphan.
Suppose the young woman above spoken of, had never been married, and the child was illegitimate. What would have been her rights in relation to her child. Precisely the same of those of the widow lady. Suppose a woman is the mother of a child, either a widow, or the child was born out of wedlock, and she owns no property, but her relations have means and will support the child— or the woman does the same by her own industry — can the county court take the child at discretion and bind it apprentice? By no means.
The act of 1822, ch. 29, sec. 2, does not mean that the county court shall have any control over the child, until it becomes a pauper, and there is a necessity that the public shall maintain it. Before this they have no “discretion.” In this case there is no pretence that the child is a pauper; on the contrary, the mother is respectable, aside from the misfortune here examined, and the child a female and very well supported.
The county court were mistaken in supposing that the reputed father had any right to the possession of the child. Therefore, the order of the court, authorizing him to take possession thereof, must be quashed. And so the circuit court ought to have ordered, had the cause been brought up by certiorari. ' >